UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

GULFSTREAM TOWERS, LLC,          )
A Florida Limited Liability Company,  )
                                 )
        PLAINTIFF,               )
                                 )
vs.                              )
                                 )
BREVARD COUNTY, FLORIDA, A Political )    Case No.
Subdivision of The State of Florida, )
                                 )
        DEFENDANT.               )
                                 )
                                 )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED TREATMENT

The Plaintiff, GULFSTREAM TOWERS, LLC ("Gulfstream"), by and through its undersigned counsel, hereby sues the Defendant, Brevard County, Florida ("the County"), and alleges as follows:

### NATURE OF ACTION

This action arises out of the unlawful denial by the County of Gulfstream's application to construct a 120' Concealed Wireless Telecommunications facility on property located at 190 Interlachen Road, Melbourne, Florida in Brevard County. The County's denial is not supported by substantial evidence contained in a written record. Accordingly, the County's denial of Gulfstream's application violates the Federal Telecommunications Act, as amended, 47 U.S.C. § 332(c)(7) (the "Telecommunications Act" or "Act"). Gulfstream seeks an injunction from this

Court directing the County to grant Gulfstream's application for the proposed facility in accordance with Gulfstream's rights under the Telecommunications Act.

Gulfstream requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(b)(v).

## PARTIES

1.      Gulfstream is a limited liability company organized under the laws of the State of Florida with its principal place of business in Winter Park, Florida.

2.      The County is a political subdivision of the State of Florida.

## JURISDICTION

3.      This is an action for declaratory and injunctive relief pursuant to the Federal Telecommunications Act of 1996, 47 U.S.C. §§ 332, et seq.  This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.  Declaratory relief is authorized by 28 U.S.C. § 2201.

## VENUE

4.      Venue is proper in this district because the County resides or is found within this district, a substantial part of the events or omissions giving rise to the claim have occurred within this district, and the property at issue is located within this district.

## GENERAL ALLEGATIONS

5.      Gulfstream is in the business of providing service to various licensed personal wireless telecommunications providers by locating, leasing, zoning, constructing, and owning personal wireless service facilities.

6.      Gulfstream proposed to build a 120' Concealed Telecommunications Tower (the "Proposed Concealed Tower") on a parcel of land leased from Christ Episcopal Church ("the Church Property").

7.      The Church property is located on the west side of Interlachen Road, south of its intersection with Wickham Road in Melbourne, Florida.

8.      The Church Property contains 8.27 acres and is zoned PUD-Planned Unit Development. The Church Property has a NC-Neighborhood Commercial Future Land Use designation.

9.      The PUD zoning and the NC Future Land Use designation allow for a broad range of uses that can be developed on the Church Property, including but not limited to, commercial, institutional, and public facilities.

10.     The Church Property is abutted by the following uses:

North: FPL Electrical Substation and 2.36 acre developed business park

South: 4.72 acre stormwater retention pond

West: .96 acre undeveloped parcel adjacent to a business park with BU-1 zoning

East: Across Interlachen Road-a 9.74 acre PUD-zoned commercial shopping

Center

11.     The Brevard County Land Development Regulations govern communications facilities in Article VI, Division 7, Chapter 62. Section 62-2420(c) provides that the Proposed Concealed Tower is permitted as a Conditional Use pursuant to the requirements in Sections 62-1901 and 62-1953.

12.     On June 16, 2023, Gulfstream submitted an application ("the CUP Application") to allow the Proposed Concealed Tower as a Conditional Use.

13.     The Brevard County Land Development Code ("LDC") Chapter 62 provides further design and general development standards for communications facilities as follows.

    a.     §62-2421 sets forth a design preference hierarchy.  A concealed tower is the highest ranked new tower design;

    b.     §62-2422(1)(a) requires that the proposed tower be setback from any residential structure a distance equal to twice the height of the proposed tower, or 240' in the case of the Proposed Concealed Tower;

    c.     §62-2422(1)(b) provides for property line setbacks. In the case of the Proposed Concealed Tower, the property line setback is 110 percent of the fall zone radius or 29.15';

    d.     §62-2422(2) suggests a maximum height for the Proposed Concealed Tower of 120' but allows this height to be exceeded as part of the conditional use application with certified support for the request;

    e.     §62-2422(3) provides that towers taller than 60' be engineered and constructed to accommodate no less than three antenna arrays;

    f.     §62-2422(7) requires that all equipment compounds be enclosed by an opaque fence; and

    g.     §62-2422(8) requires that all equipment compounds be landscaped with a 15' wide perimeter buffer containing vegetation meeting specified planting standards.

14.     The Brevard County LDC, Section 62-1901 provides generally for conditional uses and Subsection (c) provides the general standards of review as follows:

(c)     General standards of review.
(1)     The planning and zoning board and the board of county commissioners shall base the denial or approval of each application for a conditional use based upon a consideration of the factors specified in section 62-1151(c) plus a determination that the following general standards are satisfied. The board shall make the determination whether an application meets the intent of this section.

a.     The proposed conditional use will not result in a substantial and adverse impact on adjacent and nearby properties due to: (1) the number of persons anticipated to be using, residing or working under the conditional use; (2) noise, odor, particulates, smoke, fumes and other emissions, or other nuisance activities generated by the conditional use; or (3) the increase of traffic within the vicinity caused by the proposed conditional use.

b.     The proposed use will be compatible with the character of adjacent and nearby properties with regard to use, function, operation, hours of operation, type and amount of traffic generated, building size and setback, and parking availability.

c.     The proposed use will not cause a substantial diminution in value of abutting residential property. A substantial diminution shall be irrebutably presumed to have occurred if abutting property suffers a 15 percent reduction in value as a result of the proposed conditional use. A reduction of ten percent of the value of abutting property shall create a rebutable presumption that a substantial diminution has occurred. The board of county commissioners carries the burden to show, as evidenced by either testimony from or an appraisal conducted by an MAI certified appraiser, that a substantial diminution in value would occur. The applicant may rebut the findings with his own expert witnesses.

(2)     The following specific standards shall be considered, when applicable, in making a determination that the general standards specified in subsection (1) of this section are satisfied:
a.     Ingress and egress to the property and proposed structures thereon, with particular reference to automotive and pedestrian safety and convenience, traffic flow and control, and access in case of fire and catastrophe, shall be: (1) adequate to serve the proposed use without burdening adjacent and nearby uses, and (2) built to applicable county standards, if any. Burdening adjacent and nearby uses means increasing existing traffic on the closest collector or arterial road by more than 20 percent, or ten percent if the new traffic is primarily comprised of heavy vehicles, except where the affected road is at level of service A or B. New traffic generated by the proposed use shall not cause the adopted level of

service for transportation on applicable roadways, as determined by applicable county standards, to be exceeded. Where the design of a public road to be used by the proposed use is physically inadequate to handle the numbers, types or weights of vehicles expected to be generated by the proposed use without damage to the road, the conditional use permit cannot be approved without a commitment to improve the road to a standard adequate to handle the proposed traffic, or to maintain the road through a maintenance bond or other means as required by the board of county commissioners.

b.     The noise, glare, odor, particulates, smoke, fumes or other emissions from the conditional use shall not substantially interfere with the use or enjoyment of the adjacent and nearby property.

c.     Noise levels for a conditional use are governed by section 62-2271.

d.     The proposed conditional use shall not cause the adopted level of service for solid waste disposal applicable to the property or area covered by such level of service, to be exceeded.

e.     The proposed conditional use shall not cause the adopted level of service for potable water or wastewater applicable to the property or the area covered by such level of service, to be exceeded by the proposed use.

f.     The proposed conditional use must have existing or proposed screening or buffering, with reference to type, dimensions and character to eliminate or reduce substantial, adverse nuisance, sight, or noise impacts on adjacent and nearby properties containing less intensive uses.

g.     Proposed signs and exterior lighting shall not cause unreasonable glare or hazard to, traffic safety, or interference with the use or enjoyment of adjacent and nearby properties.

h.     Hours of operation of the proposed use shall be consistent with the use and enjoyment of the properties in the surrounding residential community, if any. For commercial and industrial uses adjacent to or near residential uses, the hours of operation shall not adversely affect the use and enjoyment of the residential character of the area.

i.     The height of the proposed use shall be compatible with the character of the area, and the maximum height of any habitable structure shall be not more than 35 feet higher than the highest residence within 1,000 feet of the property line.

j.     Off-street parking and loading areas, where required, shall not be created or maintained in a manner which adversely impacts or impairs the use and enjoyment of adjacent and nearby properties. For existing structures, the applicant shall provide competent, substantial evidence to demonstrate that actual or anticipated parking shall not be greater than that

6

which is approved as part of the site plan under applicable county standards.

15.    In addition to the general standards for review of Conditional Uses set forth above, Section 62-1953 <u>Wireless Telecommunication Facilities and Broadcast Towers</u>, provides further guidance for review of proposed wireless towers. Section 62-1953 provides as follows:

Wireless telecommunication facilities and broadcast towers may be permitted as a conditional use subject to the applicable requirements of article VI, division 7, section 62-1901(c) and this section.

(1)    In addition to the general review criteria in section 62-1901(c), the board shall consider the following:

a.    The aesthetic effects of the proposed tower on surrounding areas as well as mitigating factors concerning aesthetics.

b.    The board may disapprove an application on the grounds that the proposed tower's aesthetic effects are incompatible, or may condition approval on changes in tower height, design, style, buffers, or other features of the wireless communications facility or its surrounding area. Such changes in non-broadcast installations need not result in performance identical to that of the original application.

c.    Factors relevant to aesthetic effects include: the protection of the view in sensitive or scenic areas and areas specially designated in adopted plans such as unique natural features, scenic roadways and historic sites; the concentration of towers in the proposed area; and whether the height, design, placement or other characteristics of the proposed tower could be modified to have a less intrusive visual impact.

d.    If board determines that the proposed additional service of non-broadcast facilities, coverage, or capacity to be achieved by the location of the proposed facility can be achieved by use of one or more alternative existing wireless communications facilities addressed in this section, which better serve the stated goals set forth in section 62-2402, it may deny the proposed antenna support facility application.

(2)    A waiver to the maximum tower heights for wireless telecommunications facilities established in section 62-2422(2) may be considered. The applicant must demonstrate the technical necessity for the proposed tower height in excess of the maximum designation and provide written certification from a radio frequency (RF) engineer licensed in the state stating that the maximum height recommendation will not satisfy the proposed service network objective and that the proposed height is the minimum necessary to satisfy those needs.

(3)    A conditional use permit or building permit for a wireless communication facility or broadcast tower shall expire if a site plan for the tower (if required) is not submitted within one year of approval or if construction does not commence within three years of approval.

(4)     Prior to effecting the removal of any tower, the county shall provide notice and an opportunity to be heard to both the landowner and the CUP holder who shall show cause why the tower should not be removed in accordance with the provisions and requirements of the ordinance. A notice describing the reason for removal and the date of a hearing before the county commission shall be served by certified mail, fax, actual delivery, or U.S. mail (if otherwise undeliverable) at least 21 days prior to the hearing. The time for effecting removal shall be tolled pending a final determination by the board or, if an action is filed, by a court with jurisdiction.

16.     The Application submitted by Gulfstream demonstrated the following:

a.  The Concealed Proposed Tower was utilizing a concealed design, the highest ranked design in the code hierarchy for new towers.

b.  The Concealed Proposed Tower was located +/- 675' from the closest residential structure, greatly exceeding the separation requirement of 240'.

c.  The Concealed Proposed Tower was located 37.10'from the north property line, +/- 415' from the south property line, 66.5' from the east property line, and +/- 282' from the west property line, exceeding the required 29.15' property line setback.

d.  The Concealed Proposed Tower was designed so that the fall zone radius fell within the parent parcel.

e.  The Concealed Proposed Tower was designed to accommodate no less than three antenna arrays.

f.  The Concealed Proposed Tower was proposed at a height of 120', the suggested maximum height and no request was made to exceed this height.

g.  The equipment compound was designed to be enclosed with a 6' wood fence meeting the opaque fencing requirement.

f.  The Proposed Tower compound proposed landscaping that met the Brevard County landscape standards.

8

g.    The Proposed Tower was consistent with the Brevard County Comprehensive Plan.

17.    In preparation for the initial Planning and Zoning Board hearing, the professional planning staff of the County prepared Staff Comments, attached as **Exhibit A**. The Staff Comments found that Proposed Concealed Tower was consistent with the Brevard County Comprehensive Plan and found no noncompliance with the County's performance standards for wireless towers or any noncompatibility with the surrounding development.

18.    The Gulfstream application was also reviewed by the County's outside wireless consultant who also prepared Comments, attached as **Exhibit B** (the Wireless Consultant Comments). The Wireless Consultant determined that Gulfstream had met the burden of proof on the code requirements for justification for building a new tower and that the proposed tower height was appropriate and similar to many other providers' wireless towers currently serving the County.

19.    The Brevard County Planning and Zoning Board heard the matter at its October 16, 2023 meeting and recommended approval to the Board of County Commissioners.

20.    On November 2, 2023, the Board of County Commissioners held a quasi-judicial hearing on the Application.

21.    At this hearing the Staff presented the same Staff Comments and Wireless Consultant Comments that had been presented to the Planning and Zoning Board.

22.    At the November 2, 2023, Board of County Commissioners hearing, nine (9) citizens spoke against the Proposed Concealed Tower. The opposed citizens did not articulate any fact-based testimony to support a denial.

23. At the November 2, 2023 hearing the Board of County Commissioners voted 4-0 to deny the CUP application.

24. At the December 5, 2023 meeting of the Board of County Commissioners the Board approved Resolution No. 23-144, which purports to be the Findings of Fact and Conclusions of the Brevard County Board of County Commissioners pertaining to the denial of Gulfstream's CUP Application made at their meeting on November 2, 2023. A copy of the Resolution is attached hereto as **Exhibit C**.

25. The ultimate conclusion of Resolution No. 23-144 is that the Concealed Proposed Tower is "incompatible with the character of the properties surrounding the subject property and creates a negative aesthetic impact as requested."

26. There are no further details in Resolution No. 23-144 that support how an aesthetically mitigated tower utilizing a concealed design, located on property permitted for commercial development, and abutted on all sides by nonresidential uses is incompatible and creates a negative aesthetic impact.

27. The Findings of Fact set forth in the Resolution are not supported by competent, substantial evidence in the record.

## THE FEDERAL TELECOMMUNICATIONS ACT OF 1996

28. The United States Congress enacted the Federal Telecommunications Act of 1996 (the "Act") to create a national policy framework to accelerate the deployment of telecommunications technology. The Act does so in part by placing certain substantive and procedural limitations upon the authority of local bodies to regulate and limit the construction of facilities for wireless communication services.

29.     One of those limitations, found in 47 U.S.C. § 332(c)(7)(B)(iii), requires that "any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

30.     Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof, may, within 30 days after such action or failure to act, commence an action in any Court of competent jurisdiction. The Court shall hear and decide such action on an expedited basis. See 47 U.S.C. § 332 (c)(7)(B)(v).

31.     The County violated the provisions of the Act when it denied Gulfstream's Application for a 120' Concealed Wireless Telecommunications Facility without substantial evidence in the written record to support its actions.

32.     Based upon the above allegations, Gulfstream is entitled to declaratory and injunctive relief under the Act, 47 U.S.C. §§ 332, et seq., and 28 U.S.C. § 2201.

33.     Gulfstream has no adequate remedy at law and there is an actual, practical, and present need for declaratory and injunctive relief to further the policies of the Act.

34.     All conditions precedent to bringing this action have been met or waived.

## COUNT I (FOR DECLARATORY RELIEF)

35.     Gulfstream re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

36.     This is an action for declaratory relief pursuant to 47 U.S.C. § 332 and 28 U.S.C. § 2201.

37.     On June 16, 2023, Gulfstream submitted an Application to the County for Conditional Use Approval to construct a 120' Concealed Wireless Telecommunications Facility on a parcel located at 190 Interlachen Road, Melbourne, Florida in Brevard County.

38.     The Concealed Proposed Tower met all of the criteria set forth in the County's Land Development Regulations for Conditional Use approval of telecommunications towers.

39.     In spite of the uncontested facts presented in the Application and the hearing on the matter, the Commission denied Gulfstream's Application on November 2, 2023.

40.     The County violated the Act because its denial was not supported by substantial competent evidence. See 47 U.S.C. § 332(c)(7)(B)(iii).  Other than conclusory opinions, there are no facts in the record to indicate that the Concealed Proposed Tower is inconsistent with the County's Comprehensive Plan, Code, Ordinances, the intent and purpose of the County Land Development Regulations, or with the general character and aesthetics of the surrounding property.

41.     As the County has failed to support its denial with written findings of fact supported by substantial evidence, its decision cannot stand under the Federal Telecommunications Act.

WHEREFORE, Gulfstream respectfully requests that this Court enter an order declaring the County's denial of Gulfstream's Application for a 120' Concealed Wireless Telecommunications Tower Facility null and void; for the costs associated with prosecuting this action; and for such other relief as the Court deems just and proper.

## COUNT II (FOR INJUNCTIVE RELIEF)

42.     Gulfstream re-alleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

43.     This is an action for injunctive relief pursuant to 47 U.S.C. § 332.

44.     On June 16, 2023 Gulfstream submitted an Application to the County for conditional use approval to allow it to construct a 120' Concealed Wireless Telecommunications

Tower Facility on property located at 190 Interlachen Road, Melbourne, Florida in Brevard County, Florida.

45.     The Concealed Proposed Tower met all the requirements of the County's Land Development Code.

46.     The County violated the Act because its denial was not supported by substantial competent evidence. See 47 U.S.C. § 332(c)(7)(B)(iii). Nothing in the record indicates that the Concealed Proposed Tower is inconsistent with the County's Comprehensive Plan, Code, Ordinances, the intent and purpose of the County Land Development Regulations, or with the general character and aesthetics of the surrounding property.

47.     Thus, pursuant to the Act the County's decision cannot stand.

48.     Because the denial of Gulfstream's Application is not supported by competent, substantial evidence, this Court, pursuant to the Act, should issue an injunction mandating the approval of the Application as submitted on this record.

WHEREFORE, Gulfstream respectfully requests that this Court enter a Judgment declaring the County's denial of Gulfstream's Application for a 120' Concealed Wireless Telecommunications Tower Facility null and void; for a mandatory injunction instructing the County to approve Gulfstream's Application as submitted; for the costs associated with prosecuting this action; and for such other relief as this Court deems just and proper.

Dated:  January 3, 2024.

RESPECTFULLY SUBMITTED,

Mary D. Solik, Esq.
Fla. Bar No. 856479
DOTY SOLIK LAW, PA
Florida Bar No. 0856479
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
Telephone: 407-367-7868
E-mail:  msolik@dotysoliklaw.com
Attorney for Gulfstream Development, LLC